T.C. Summary Opinion 2005-34

UNITED STATES TAX COURT

RONALD C. MCKEE AND ANITA L. MCKEE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8729-04S.                    Filed March 29, 2005.

<u>John D. Maxey</u>, for petitioners.

<u>Jeremy L. McPherson</u>, for respondent.

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 2001, the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

For the taxable year 2001, respondent determined a deficiency in petitioners' Federal income tax in the amount of $5,574 and an accuracy-related penalty under section 6662(a) in the amount of $860.

Petitioners concede that they are liable for the deficiency in income tax as determined by respondent. Thus, the only issue for decision by the Court is whether petitioners are liable for the accuracy-related penalty on that deficiency. We hold that they are.

## Background

This case was submitted fully stipulated under Rule 122. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

Petitioners resided in Roseville, California, at the time that their petition was filed with the Court.

## A. Petitioner Ronald C. McKee's Commission Income

Petitioner Ronald C. McKee (Mr. McKee) worked as a car salesman for Autocar Inc. of Roseville (Autocar), California, from 1998 through May 2001. Mr. McKee was paid on a commission basis for his services as an employee of Autocar.

From January through May 2001, Mr. McKee received a paycheck from Autocar every 2 weeks, along with a pay stub showing his wages for the 2-week period and his "year-to-date" wages.

For 2001, Autocar paid to Mr. McKee total wages in the amount of $21,666.[2]  For that year, Autocar issued to Mr. McKee two Forms W-2, Wage and Tax Statement.[3]  On the first such Form W-2 (first W-2), Autocar reported wages paid to Mr. McKee in the amount of $7,891; on the second such Form W-2 (second W-2), Autocar reported wages paid to Mr. McKee in the amount of $13,775.  Mr. McKee received the first W-2; however, he did not receive the second W-2.

Petitioners timely filed a joint Federal income tax return for 2001.  On their return, petitioners reported wages from Autocar in the amount of $7,891, as reflected on the first W-2, and they attached to their return a copy of that W-2.  Petitioners did not report, on their 2001 return, wages from Autocar in the amount of $13,775, as reflected on the second W-2.

Petitioners did not compare the $7,891 of wages reported on the first W-2 with the total "year-to-date" wages reported on the final pay stub for 2001 from Autocar.  Indeed, petitioners did not look at the first W-2; rather, they placed it in a tax folder provided by petitioners' income tax return preparer and then forwarded that folder to the preparer.

---

[2]  All monetary amounts are rounded to the nearest dollar.

[3]  The record does not disclose why Autocar would have issued two Forms W-2 to Mr. McKee for the same taxable year.

After the 2001 return had been prepared by petitioners' income tax return preparer, petitioners did not compare the $7,891 of wages reported on the return with the total "year-to-date" wages reported on the final pay stub for 2001 from Autocar.

B.    Petitioners' Other Income

In 2001, Mr. McKee also received wages in the amount of $6,921 from Cypress Home Loan Corporation of Roseville, California.  Petitioners properly reported these wages on their 2001 return.

In 2001, petitioner Anita L. McKee received wages in the amount of $33,316 from Roseville Joint United High School. Petitioners properly reported these wages on their 2001 return.

In 2001, petitioners received interest income in the amount of $2,126.  Petitioners properly reported this income on their 2001 return.

Finally, in 2001, Mr. McKee received taxable distributions from retirement plans in the aggregate amount of $17,783. Petitioners properly reported these distributions on their 2001 return.

C.    Petitioners' Reported Tax Liability

On their 2001 return, petitioners reported income tax in the amount of $7,122.

D.    Respondent's Notice of Deficiency

Respondent determined a deficiency in petitioners' income

tax for 2001 based on petitioners' failure to report on their return for that year wages received by Mr. McKee from Autocar in the amount of $13,775. In a Stipulation of Settled Issues, petitioners conceded that they are liable for the deficiency in income tax as determined by respondent.

Respondent also determined an accuracy-related penalty under section 6662(a) based on petitioners' failure to report the aforementioned wages. In this regard, respondent determined that the underpayment is attributable to (1) negligence or disregard of rules or regulations and/or (2) a substantial understatement of tax.

Discussion

A. Substantive Law

Section 6662(a) imposes a penalty equal to 20 percent of any underpayment of tax that is attributable to either (1) negligence or disregard of rules or regulations or (2) a substantial understatement of income tax. See sec. 6662(a), (b)(1) and (2).

The term "negligence" includes any failure to make a reasonable attempt to comply with the Internal Revenue Code. Sec. 6662(c). The term "disregard" includes any careless, reckless, or intentional disregard. Id.; sec. 1.6662-3(b)(2), Income Tax Regs.

An understatement of income tax is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown

on the return, or $5,000. Sec. 6662(d)(1)(A). As relevant herein, an "understatement" is defined as the excess of the tax required to be shown on the return over the tax actually shown on the return. Sec. 6662(d)(2)(A).

The accuracy-related penalty does not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs.; see United States v. Boyle, 469 U.S. 241, 242 (1985). The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of a taxpayer's effort to assess the taxpayer's proper tax liability for such year. Id.

B.   Burden of Production and Burden of Proof

By virtue of section 7491(c), the Commissioner has the burden of production with respect to the liability of any individual for any penalty. "[F]or the Commissioner to meet his burden of production, the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty." Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner meets the burden of production, the taxpayer must come forward with persuasive evidence that the

Commissioner's determination is incorrect. <u>Id.</u> Typically, the taxpayer would be obliged to prove that he or she acted with reasonable cause and in good faith. See sec. 6664(c)(1); see also <u>Higbee v. Commissioner</u>, <u>supra</u> at 448-449; sec. 1.6664-4(b)(1), Income Tax Regs.

The Commissioner may satisfy his burden of production for the accuracy-related penalty based on negligence or disregard of rules or regulations by showing that the taxpayer failed to report a significant amount of income shown on an information return the accuracy of which is not in dispute. See sec. 1.6662-3(b)(1)(i), Income Tax Regs.; cf. <u>Owens v. Commissioner</u>, T.C. Memo. 2002-253 n.11, affd. in part 67 Fed. Appx. 253 (5th Cir. 2003). The Commissioner may satisfy his burden of production for the accuracy-related penalty based on substantial understatement of income tax by showing that the understatement on the taxpayer's return satisfies the definition of "substantial". E.g., <u>Graves v. Commissioner</u>, T.C. Memo. 2004-140; <u>Janis v. Commissioner</u>, T.C. Memo. 2004-117.

C.  <u>Analysis</u>

The record demonstrates that petitioners failed to report wage income in the amount of $13,775. The record also demonstrates that the understatement of income tax on petitioners' return attributable to such unreported income was

substantial within the meaning of section 6662(d)(1)(A).[4] Accordingly, we hold that respondent satisfied his burden of production for the accuracy-related penalty based on both negligence or disregard of rules or regulations and substantial understatement of income tax.

We turn now to whether petitioners acted with reasonable cause and in good faith, within the meaning of section 6664(c)(1), so as to escape liability for the accuracy-related penalty (whether based on negligence or disregard of rules or regulations, or on a substantial understatement of income tax).

The numbers in this case speak for themselves. Thus, petitioners failed to report over 63 percent of the wages received by Mr. McKee from Autocar ($13,775/$21,666). Compared to wages received by Mr. McKee from both of his employers, petitioners failed to report over 48 percent of Mr. McKee's wages ($13,775/$28,587). Compared to wages received by petitioners from all three of their employers, petitioners failed to report over 22 percent of their total wages ($13,775/$61,903). Compared to income received by petitioners from all sources, petitioners failed to report over 16 percent of their total income ($13,775/$81,812).

---

[4] The $5,574 understatement of tax exceeds $5,000 and is 43.9 percent of the tax required to be shown on petitioners' return ($12,696; i.e. $7,122 + $5,574).

Petitioners seek to negate the impact of the foregoing by arguing that they did not receive the second W-2 from Autocar and by professing reliance on their tax preparer to prepare an accurate return.[5]  Yet, petitioners did not compare the $7,891 of wages reported on the first W-2 from Autocar with the total "year-to-date" wages reported on the final pay stub from Autocar. Indeed, petitioners did not even look at the first W-2. Furthermore, after the 2001 return had been prepared by the preparer, petitioners did not compare the $7,891 of wages reported on the return with the total "year-to-date" wages reported on the final pay stub from Autocar.

We have consistently held that blind reliance on a return preparer is not a defense; rather, the taxpayer is generally required to review the return before signing and filing it. E.g., <u>Metra Chem Corp. v. Commissioner</u>, 88 T.C. 654, 662 (1987); <u>Bronson v. Commissioner</u>, T.C. Memo. 2002-260; <u>Osborne v. Commissioner</u>, T.C. Memo. 2002-11; <u>Bilzerian v. Commissioner</u>, T.C. Memo. 2001-187.  Furthermore, we cannot conceive of any reason why these principles should not apply in the present case.

If Mr. McKee had even looked at the first W-2 from Autocar, he would have been alerted to the fact that the W-2 included only about one-third of his income from Autocar.  See and compare sec.

---

[5]  It should be recalled that the second W-2 from Autocar reported wages paid to Mr. McKee in the amount of $13,775.

1.6664-4(b)(2), <u>Example</u> (<u>3</u>), Income Tax Regs.  Indeed, if Mr. McKee had compared the first W-2 from Autocar with his final pay stub from Autocar, he would have known that the W-2 included only about one-third of his income from Autocar.  And, if Mr. McKee had reviewed his return, he would have been alerted to the fact that his wages from Autocar were understated for the year.  In short, it simply cannot be said in this case that the error on petitioners' return was the result of the preparer's mistake based on otherwise complete and correct information provided by petitioners.  See <u>Pessin v. Commissioner</u>, 59 T.C. 473, 489 (1972).

D.   <u>Conclusion</u>

Under the circumstances of this case, we are unable to conclude that petitioners acted with reasonable cause and in good faith within the meaning of section 6664(c)(1).  Accordingly, petitioners are liable for the accuracy-related penalty under section 6662(a) as determined by respondent in the notice of deficiency.

We have considered all of the other arguments made by petitioners and, to the extent that we have not specifically addressed them, we find them to be without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To give effect to our disposition of the disputed issue, as well as the parties' Stipulation of Settled Issues,

<u>Decision will be entered</u>

<u>for respondent.</u>